UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISIION AT LEXINGTON

| | |
|---|---|
| **PREFERRED AUTOMOTIVE SALES, INC,** <br>   **Plaintiff,** <br><br> **V.** <br><br> **MOTORISTS MUTUAL INS. CO.,** <br>   **Defendant.** | **CIVIL ACTION NO. 5:13-cv-145-KKC** <br><br><br> **OPINION AND ORDER** |

This matter is before the Court on cross motions for summary judgment in whole or in part by the parties. For the reasons stated below, the motion of Defendant, Motorists Mutual Ins. Co. ("Motorists") will be granted, and the motion of Plaintiff Preferred Automotive Sales, Inc. ("Preferred") will be denied.

I.   **BACKGROUND**

The issue in this case is interpretation of an Auto Dealers Legal Defense Coverage endorsement to a Garage Coverage insurance policy. At this stage, there is no dispute regarding the facts. The only dispute is the legal question of whether Motorists had a duty to defend Preferred when it was sued by its customer, Charles Allen ("Allen").

On February 23, 2004, Motorists issued Preferred a business insurance policy, which included a "Commercial Property Coverage Form, Commercial General Liability Coverage Form [and] Commercial Garage Coverage Form." DE 20-1, CM/ECF p. 3.[1] An Endorsement to the Garage Form added Broad Form Garage Insurance Coverage, which included the Legal Defense Coverage. DE 20-3, pp. 11-16.

On January 29, 2005, Allen purchased a 1998 Mercedes Benz from Preferred Automotive. He soon complained that the vehicle had mechanical and cosmetic issues. Tafel Motors subsequently determined that the vehicle had previous damage to the front end,

---

[1] All page references are to the CM/ECF page numbering in the record, unless otherwise noted.

passenger side, rear, frame and braking system. On September 7, 2005, Allen sued Preferred (the "Allen Suit"), alleging that Preferred provided a false Damage Disclosure Notice saying that the automobile had sustained no prior damage. DE 21-2, p.2, ¶ 6. In Count I, the Allen Suit alleged a willful violation of the Consumer Protection Act. Count II alleged fraud, saying Preferred "knowingly and recklessly made material misrepresentations and omissions, upon which Plaintiff relied to his detriment and injury." *Id.,* p. 4, ¶ 19. Count III alleged breach of contract/estoppel/unjust enrichment. *Id.,* pp. 4-5. Count IV alleged negligence. *Id.,* p. 5.

Preferred was served with a summons on June 26, 2006 and demanded that Motorists indemnify and/or defend Preferred in the Allen Suit. By letter dated July 14, 2006, Motorists denied coverage because Allen's "claims do not arise to 'bodily injury' or 'property damage' caused by either an 'accident' or 'occurrence' as defined in the policy." DE 1-2, p. 16. The denial further noted that coverage was excluded for "intentional conduct, breach of contract and damages to 'your work' or 'your product.'" *Id.*

The Allen Suit was resolved May 16, 2008 by a jury verdict that Preferred intentionally misrepresented the condition of the car to Allen, who relied on those misrepresentations to his detriment. The jury also found that Preferred engaged in unfair, false, misleading or deceptive practices in selling the vehicle to Allen. The jury awarded Allen $55,114.35 in compensatory damages and $111,000.00 in punitive damages.

The Preferred insurance policy issued by Motorists consists of three coverage forms: (1) Commercial Property Coverage Form; (2) Commercial General Liability Coverage Form; and (3) Garage Coverage Form. DE 20-1, p. 3. The Property Coverage lists two buildings in Nicholasville – a frame building occupied by "used autos and trucks," and a non-combustible building occupied by a "mechanic shop." *Id.,* pp. 19-20. Among the items excluded from property damage coverage are "[a]utomobiles held for sale." *Id.,* p. 24, ¶ 2.c.

The Commercial General Liability Coverage "applies to 'bodily injury' and 'property damage' only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that

takes place in the 'coverage territory.'" DE 20-2, p. 16, ¶ 1.b.  Excluded from coverage are: "'property damage' to 'your product' arising out of it or any part of it" and "'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'"  DE 20-2, p. 20, ¶¶ 2.k., l.  The definitions section of the General Liability Coverage contains the following definitions:  "'Occurrence' means an accident…."  DE 20-2, p. 29, ¶ 13. "'Your product' means [a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by you."   DE 20-2, p. 30, ¶ 21.a.(1)(a).

These other forms of coverage place in context the Garage coverage with its Legal Defense Coverage provision, on which Preferred bases its argument that Motorists was obligated to defend it.  The Broad Form Garage endorsement states on its introductory pages that the "coverages provided by this endorsement are applicable only to 'garage operations' other than the ownership, maintenance or use of the covered 'autos.'"  DE 20-3, p. 11.

The Garage Operations' Liability Coverage provides that it will pay "damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'accident' and resulting from 'garage operations'…."  DE 20-3, p. 21, ¶ A.1.a.  Excluded from coverage is any liability "assumed under any contract or agreement."  *Id.*, p. 23, ¶ B.2.  Also excluded is "'property damage' to 'work you performed' if the 'property damage' results from any part of the work itself or from the parts, materials or equipment used in connection with the work."  *Id.*, p. 25, ¶ B.13.  "Garage operations" is defined as "the ownership, maintenance or use of locations for garage business…."  DE 20-4, p. 8, ¶ H.  "Products" are defined as the "goods or products you made or sold in a garage business."  *Id.*, p. 9, ¶ N.a.  "Suit" is defined as "a civil proceeding in which damages because of 'bodily injury' or 'property damage' … to which this insurance applies, are claimed."  *Id.,* ¶ P.  The Legal Defense Coverage provision states:  "We have the right and duty to defend any 'suit' brought against you by or on behalf of a customer of yours that results from damage to 'your product' or 'work you performed.'"

3

## II. ANALYSIS

### A. Summary Judgment Standard

In diversity actions, substantive state law applies, but federal standards for summary judgment govern. *Martin v. Cincinnati Gas and Elec. Co.,* 561 F.3d 439, 442 (6th Cir. 2009). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). For purposes of their summary judgment motions in this case, the parties agree that there is no genuine issue of disputed fact. There is only a question of law.

### B. Interpretation of Insurance Contracts Generally

Under Kentucky law, interpretation and construction of an insurance contract is a matter of law for the court. *Bituminous Casualty Corp. v. Kenway Contracting, Inc.,* 240 S.W.3d 633, 638 (Ky. 2007). Kentucky's canons of construction "are to be applied when the language of the insurance contract is ambiguous or self-contradictory. Otherwise, the contract is to be read according to its plain meaning, its true character and purpose, and the intent of the policies." *Peoples Bank & Trust Co. of Madison County v. Aetna Casualty & Surety Co.*, 113 F.3d 629, 636 (6th Cir. 1997). "Where the terms of a policy are clear and unambiguous, the policy will be enforced as written." *Kemper Nat'l Ins. Cos. V. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873 (Ky. 2000). "[A]mbiguous language must be liberally construed so as to resolve all doubts in favor of the insured." *Bituminous*, 240 S.W.3d at 638. "[E]xclusions in insurance policies should be narrowly construed as to effectuate insurance coverage." *Aetna Casualty & Surety Co. v. Commonwealth*, 179 S.W.3d 830, 840 (Ky. 2005).

This case involves the duty to defend. The duty to defend is broader than the duty to indemnify. *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins.*, 814 S.W.2d 273, 280 (Ky. 1991). "[A]n insurer has a duty to defend if there is any allegation which potentially,

4

possibly or might come within the coverage terms of the insurance policy." *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.,* 306 S.W.3d 69, 79 (Ky. 2010). "The insurance company must defend any suit in which the language of the complaint would bring it within the policy coverage regardless of the merit of the action." *James Graham Brown*, 839 S.W.2d at 279. "The determination of whether a defense is required must be made at the outset of the litigation." *Id.*

### C. Interpretation of the Motorists' Policy

Preferred argues that Shelter had a duty to defend it in the Allen Suit under the Legal Defense Coverage, which provides:

> We have the right and duty to defend any "suit" brought against you by or on behalf of a customer of yours that results from damage to "your product" or "work you performed."

DE 20-3, p. 16.

Preferred contends that the Allen Suit falls within the plain meaning of this coverage because it was a suit by a customer involving damage to Allen's vehicle, which Preferred says was its "product." DE 21-5, p.7. Preferred argues that the definition of "suit" and the definition of "products" in Section VI of the Garage Coverage Form do not apply because the Other Provisions section of the Legal Defense Coverage only mentions Section II and Section V. *Id.*, p. 8.

Regarding the definition of "suit," Preferred argues that there are no damages to which the Legal Defense Coverage applies. Accordingly, it removes those words from the definition and claims that the definition is reduced to "a civil proceeding in which damages are claimed." DE 21-5, p. 9. Preferred says the duty to defend "is extended to claims to which no other coverage applies." *Id.*, p. 7. In other words, Preferred is saying the defense coverage requires a defense for all claims, regardless of whether there is insurance coverage under the policy or not. But this argument stretches the policy beyond all limits. Under Preferred's interpretation, a customer could sue, and Motorists would be required to defend, a claim that results from damage to the "product" from pollution. Yet, property damage from pollution is expressly

5

excluded from coverage. DE 20-3, p. 24, ¶ 8. According to Preferred, Motorists would also be required to defend a claim that the "product" was defective, but the policy expressly excludes property damage to a product caused by a defect in the product or any part of the product at the time it was transferred to another. DE 20-3, p. 25, ¶ 12. Preferred's definition of suit renders all of the policy coverage provisions and the exclusions meaningless.

The "Definitions" section of the Broad Form Garage Insurance Coverage defines "suit" as follows:

"Suit" means a civil proceeding in which:

1. Damages because of "bodily injury" or "property damage"; or

2. A "covered pollution cost or expense,"

to which this insurance applies, are claimed.

DE 20-4, p. 9, ¶ P. The critical language is that the damage, whether bodily or property, must be of the type **to which this insurance applies**.

Motorists says that "Preferred's entire argument rests upon a tortured analysis pertaining to the definition of 'suit.'" DE 24, p. 1. It notes that the Broad Form Garage Insurance Coverage endorsement states that "[w]ith respect to coverage provided by this endorsement, the provisions of the Garage Coverage Form apply unless modified by the endorsement." DE 20-3, p. 11. The introduction to the Garage Coverage Form states in part: "words and phrases that appear in quotation marks have special meaning. Refer to Section VI – Definitions." *Id.,* p. 20. In *Kemper,* the court said the "policy and its endorsements validly made a part thereof together form the contract of insurance, and are to be read together to determine the contract actually intended by the parties." *Kemper*, 82 S.W.3d at 875, quoting 1 Couch on Insurance 2d, § 4.36. Motorists further notes that the Broad Form Garage endorsement repeatedly uses the term "suit" with quotation marks around it, strongly supporting Motorists' argument that the definition of suit applies. DE 24, p. 2. Even the short Legal Defense Coverage section uses "suit" in quotation marks eight times.

6

It is the opinion of this Court that the quoted terminology in the policy must be read in the context of its special meaning set out in the definitions. The policy says that words in quotation marks have special meaning. The policy and its endorsements must be "read together to determine the contract actually intended by the parties." *Kemper*, 82 S.W.3d at 875. There is only a duty to defend if there is an allegation that "might come within the coverage terms of the insurance policy." *Cincinnati Ins. Co.*, 306 S.W.3d at 79. "The insurance company must defend any suit in which the language of the complaint would bring it within the policy coverage...." *James Graham Brown*, 839 S.W.2d at 279. Preferred does not cite to any authority in support of its position that the duty to defend applies to claims where there is no policy coverage.

The Allen complaint alleged: willful violation of the Consumer Protection Act (Count I), fraud (Count II), breach of contract/estoppel/unjust enrichment (Count III), and negligence (Count IV). DE 22-2. There is no claim of bodily injury or property damage to which the insurance applies. The factual allegations of the complaint are that previous damage to the vehicle was not disclosed and that this constituted "willful and/or reckless material misstatements and omissions." *Id.,* ¶ ¶ 6, 9-10. Thus, Allen did not claim that Preferred "damaged" his property. His claim was only that there was a failure to disclose prior damage. Negligent misrepresentations and omissions do not constitute property damage for insurance coverage purposes. See *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 582 (6th Cir. 2001), citing with approval *Allstate Ins. Co. v. Morgan*, 806 F. Supp. 1460, 1463 (N.D. Ca. 1992).

When the language of the complaint is compared to the coverage terms of the insurance policy, there is no allegation "which potentially, possibly or might come within the coverage terms of the insurance policy." *Cincinnati Ins.*, 306 S.W.3d at 79. *See also Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001) ("The determination of whether a defense is required must be made at the outset of the litigation by reference to the complaint and known facts.").

Moreover, there is no allegation of an "accident" resulting from garage operations, as required under the Liability Coverage for Garage Operations, which is expressly made applicable to the Legal Defense Coverage. DE 20-3, p. 16, ¶ D; p. 21, ¶ A.1.a. Nor is there an allegation that the Allen vehicle was a product or result of the "garage operations," rather than the used auto dealer business. The definition of "products" includes only "[t]he goods or products you made or sold in a garage business" or a failure to warn. DE 20-4, p. 9, ¶ N. Motorists' determination, made at the outset of the litigation, was correct that the Allen Suit had no potential for coverage under the policy. Accordingly, there was no duty to defend.

Additionally, the allegations of the Allen Suit fall within several exceptions to the policy. "Automobiles held for sale" are expressly excluded from property damage coverage. DE 20-1, p. 24, ¶ 2.c. "'Property damage' to 'your product' arising out of it" is excluded from general liability coverage. Garage Operations liability coverage excludes any liability "assumed under any contract or agreement." *Id.*, p. 23, ¶ B.2.

### III. CONCLUSION

**IT IS ORDERED AND ADJUDGED** that:

1. Preferred Automotive's motion for partial summary judgment [DE 21] is **DENIED**;

2. Motorists Mutual's motion for summary judgment [DE 22] is **GRANTED**; and

3. Judgment in favor of Motorists Mutual shall be entered contemporaneously with this Opinion.

This August 26, 2014.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY