UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION -- LEXINGTON

| | |
|---|---|
| **PREFERRED AUTOMOTIVE SALES, INC.,** | **CIVIL ACTION NO. 5:13-cv-145-KKC** |
| Plaintiff, | |
| V. | **MEMORANDUM<br>OPINION AND ORDER** |
| **MOTORISTS MUTUAL INS. CO.,** | |
| Defendant. | |

  This matter is before the Court on Plaintiff Preferred Automotive Sales, Inc.'s ("Preferred") Motion to Alter or Amend the Judgment. (DE 31). For the reasons set forth below, the Court will deny Plaintiff's motion.

### I. FACTUAL AND PROCEDURAL HISTORY

  The primary dispute in the instant motion was decided by the Court's August 26, 2014, Opinion and Order granting Defendant Motorists Mutual Insurance Co.'s ("Motorists") motion for summary judgment. (DE 29.) The parties have long disputed the interpretation of an Auto Dealers Legal Defense Coverage endorsement to a Garage Coverage insurance policy. The facts remain undisputed, but Preferred insists that the Court erred in deciding that Motorists had no duty to defend against a suit brought by Preferred's customer, Charles Allen (the "Allen Suit"). The vast majority of Plaintiff's renewed arguments are "merely repackaged" versions of its prior interpretation arguments. (DE 32 at 1.) The Court is not persuaded to view these reconstituted editions any more favorably.

  On February 23, 2004, Motorists issued Preferred a business insurance policy, which included a "Commercial Property Coverage Form, Commercial General Liability Coverage Form [and] Commercial Garage Coverage Form." (DE 20-1 at 3.) An endorsement to the

Garage Form added Broad Form Garage Insurance Coverage, which included the disputed Legal Defense Coverage. (DE 20-3 at 11–16.)

On January 29, 2005, Charles Allen purchased a Mercedes from Preferred. He soon complained that the vehicle had mechanical and cosmetic issues. Tafel Motors subsequently determined that the vehicle had previous damage to the front end, passenger side, rear, frame and braking system. On September 7, 2005, Allen filed suit, alleging that Preferred provided a false Damage Disclosure Notice saying that the automobile had sustained no prior damage. (DE 21-2 at 2.) In Count I, the Allen Suit alleged a willful violation of the Consumer Protection Act. Count II alleged fraud, claiming Preferred "knowingly and recklessly made material misrepresentations and omissions, upon which Plaintiff relied to his detriment and injury." (DE 21-2 at 4.) Count III alleged breach of contract/estoppel/unjust enrichment. (DE 21-2 at 4–5.) Count IV alleged negligence. (DE 21-2 at 5.)

Preferred was served with a summons on June 26, 2006, and demanded that Motorists indemnify and/or defend Preferred in the Allen Suit. By letter dated July 14, 2006, Motorists denied coverage because Allen's "claims do not arise to 'bodily injury' or 'property damage' caused by either an 'accident' or 'occurrence' as defined in the policy." (DE 1-2 at 16.) The denial further noted that coverage was excluded for "intentional conduct, breach of contract and damages to 'your work' or 'your product.'" (DE 1-2 at 16.)

On May 16, 2008, a jury found that Preferred intentionally misrepresented the condition of the car to Allen, who relied on those misrepresentations to his detriment. The jury also found that Preferred engaged in unfair, false, misleading or deceptive practices in selling the vehicle to Allen. The jury awarded Allen $55,114.35 in compensatory damages and $111,000.00 in punitive damages.

2

The Preferred insurance policy issued by Motorists consists of three coverage forms: (1) Commercial Property Coverage Form; (2) Commercial General Liability Coverage Form; and (3) Garage Coverage Form. (DE 20-1 at 3.) The Property Coverage lists two buildings in Nicholasville—a frame building occupied by "used autos and trucks," and a non-combustible building occupied by a "mechanic shop." (DE 20-1 at 19–20.) Among the items excluded from property damage coverage are "[a]utomobiles held for sale." (DE 20-1 at 24)

The Commercial General Liability Coverage "applies to 'bodily injury' and 'property damage' only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" (DE 20-2 at 16.) Excluded from coverage are: "'property damage' to 'your product' arising out of it or any part of it" and "'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" (DE 20-2 at 20.) The definitions section of the General Liability Coverage contains the following definitions: "'Occurrence' means an accident…." DE 20-2 at 29.) "'Your product' means [a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by you." (DE 20-2 at 30.)

These other forms of coverage place in context the Garage coverage with its Legal Defense Coverage provision, on which Preferred bases its argument that Motorists was obligated to defend it. The Broad Form Garage endorsement states on its introductory pages that the "coverages provided by this endorsement are applicable only to 'garage operations' other than the ownership, maintenance or use of the covered 'autos.'" (DE 20-3 at 11.)

The Garage Operations' Liability Coverage provides that it will pay "damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'accident' and resulting from 'garage operations'…." (DE 20-3 at 21.) Excluded from coverage is any liability "assumed under any contract or agreement." (DE 20-3 at 23.) Also

3

excluded is "'property damage' to 'work you performed' if the 'property damage' results from any part of the work itself or from the parts, materials or equipment used in connection with the work." (DE 20-3 at 25.) "Garage operations" is defined as "the ownership, maintenance or use of locations for garage business…." (DE 20-4 at 8.) "Products" are defined as the "goods or products you made or sold in a garage business." (DE 20-4 at 9.) "Suit" is defined as "a civil proceeding in which damages because of 'bodily injury' or 'property damage' … to which this insurance applies, are claimed." (DE 20-4 at 9.) The Legal Defense Coverage provision states: "We have the right and duty to defend any 'suit' brought against you by or on behalf of a customer of yours that results from damage to 'your product' or 'work you performed.'"

This Court found that Motorists had no duty to defend Preferred in the Allen Suit, in part, because the action did not fall within the definition of "suit," as defined in the Garage Coverage Form. Specifically, because the claims were not of a type "**to which this insurance applies.**" (DE 29 at 6.) Preferred's motion challenges this finding on a number of grounds including: (1) that applying the Garage Form's "suit" definition to the Broad Form leads to ambiguity (DE 31-1 at 4); (2) that such a construction leaves the Legal Defense section of the Broad Form entirely redundant (DE 31-1 at 8); and (3) that the Court's definition is inconsistent with coverage previously extended by Motorists (DE 33 at 5.) As another bases for alteration, Preferred argues that documents it received prior to responding to Motorists motion for summary judgment—unaddressed by Preferred's response—support its construction of the Auto Dealers Legal Defense Coverage. These objections do not satisfy the significant burden imposed by the Federal Rules for the relief Preferred seeks and; thus, their motion to alter or amend the judgment will be denied. Fed. R. Civ. P. 59(e).

4

## II. ANALYSIS

### A. STANDARD OF REVIEW

Motions to alter or amend a judgment are governed by Federal Rule of Civil Procedure 59(e). To succeed, the movant must show one of the following: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Howard v. Magoffin Co. Bd. of Educ.*, 830 F. Supp. 2d 308, 319 (E.D. Ky. 2012) (quoting *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010)). However, "[a] motion under Rule 59(e) is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Plaintiff claims that this Court's interpretation of the Legal Defense Coverage provision was a clear error of law and that their motion to alter or amend must be granted to prevent a manifest injustice. (DE 31-1 at 4.)

### B. CLEAR ERROR OF LAW: AMBIGUITY

Preferred argues that applying the Garage Form's definition of "suit" to the Broad Form endorsement's Legal Defense Coverage section creates an ambiguity that must be resolved in its favor. In support, Preferred points to potentially anomalous results which would allegedly follow from extending this construction to other sections of the Broad Form. (DE 31-1 at 5.) Specifically, Preferred finds ambiguity in the Personal and Advertising Injury, Truth in Lending, and Federal Odometer Statute sections. (DE 31-1 at 5.) Even ignoring the fact that none of these sections were at issue in the Allen Suit, this argument fails because the absurd consequences Preferred alleges are not dictated by this Court's previous holding.

"[T]he Broad Form . . . endorsement states that '[w]ith respect to coverage provided by this endorsement, the provisions of the Garage Coverage Form apply *unless modified by the endorsement*.'" (DE 29 at 6 (emphasis added).) As Motorists points out, the Broad Form

5

sections in which Preferred would find ambiguity have specific provisions modifying the damages available under the Garage Form's definition of "suit." (DE 32 at 5–7.) "The mere fact that [Preferred] attempt[s] to muddy the water and create some question of interpretation does not necessarily create an ambiguity." *See Sutton v. Shelter Mut. Ins. Co.*, 971 S.W.2d 807, 808 (Ky. Ct. App. 1997). Preferred looks to create ambiguity where none exists by comparing dissimilar Broad Form sections. Stated simply, it seeks to take this Court's holding on "apples" and apply it directly to "oranges." Preferred's attempted post hoc extension of this Court's earlier opinion to Broad Form sections that have distinct modifiers provides no evidence of ambiguity in the Legal Defense Coverage.

Preferred's contention that "the Garage Form's definition of 'suit' makes absolutely no sense applied to the Auto Dealer's Legal Defense Coverage" is, likewise, meritless. Preferred errs by equating two distinct concepts, "coverage" (or "claims to which the insurance applies") and indemnity. (DE 33 at 1–2.) Coverage, as used in the Court's opinion, and in the Legal Defense section encompasses more than damages requiring Motorists' indemnification. Contrary to Preferred's representations, this Court did not hold that claim "coverage" establishing a duty to defend could *never* arise without a concurrent duty to indemnify for the damages claimed. (DE 33 at 1–2.) The Legal Defense Coverage provides limited circumstances in which precisely such a duty to defend might arise without an accompanying duty to indemnify. "The form clearly and unambiguously provides that the 'insurance applies' to those claims for damage to 'your product' or 'work you performed' which are otherwise excluded under the garage policy." (DE 32 at 3.) This Court simply held that the Allen Suit did not present any of the limited circumstances in which the Legal Defense Coverage applied. (DE 29 at 7.) The fact that the Allen Suit's claims were not within the narrow category of damage claims for which the Garage Policy did not provide indemnification, but provided for the insured's defense does not indicate

that this category was ambiguous. Thus, the Garage Form's definition of "suit" can be applied to the Legal Defense provisions unambiguously.

Finally, Preferred contends that under the Court's interpretation, the Legal Defense Coverage's exclusion for "[d]amages resulting from a 'suit'" renders the provision meaningless. Clearly, this exclusion clarifies that the Legal Defense Coverage only extends the duty to defend, not the duty to indemnify. The coverage "applies" to suits *claiming* damages within its scope, regardless of whether it "applies" to damages *resulting* from a covered suit. This is precisely the situation described by Motorists in its response to the instant motion. (DE 32 at 4.) What Preferred fails to realize is that in the insurance context, Motorists clarifying its intent to extend legal coverage, but not indemnity coverage, was neither redundant nor illogical. If anything, this coverage scope explanation pushed the disputed provision further outside the realm of ambiguity.

## C. MANIFEST INJUSTICE

Having found that the Legal Defense Coverage section of the Broad Form was unambiguous, the Court must still consider whether that finding would result in manifest injustice. Fed. R. Civ. P. 59(e). As stated previously, the Garage Form's definition of "suit" is applicable to the Legal Defense Coverage. The disputed Broad Form section provides a limited expansion of legal defense coverage to claims otherwise explicitly exempted from *any* coverage under the Garage Form. (DE 32 at 2–3.) Thus, the expanded coverage provides a concurrent limited extension of covered "suits" to claims resulting from damage to "your product." However, the Allen Suit did not include such a claim. Consequently, there was no claim for damages to which the Legal Defense Coverage applied.

There is no dispute that Preferred's product was damaged, but Mr. Allen did not complain of product damage. His claims arose from precisely the type of "dishonest . . . fraudulent" conduct excluded by the Legal Defense Coverage. (DE 20-3 at 16.) Seemingly,

7

Preferred has yet to unearth "any authority [holding] that the duty to defend applies to claims where there is *no* policy coverage" or to claims arising out of conduct explicitly excluded by the policy's terms. (DE 29 at 7 (emphasis added).) Consequently, the Court reiterates that the Allen Suit was not a "suit" within the meaning of the Section XIII Legal Defense Coverage.

### D. EXTRINSIC EVIDENCE

Preferred's arguments both relating to Motorists prior extensions of coverage, and alleged objections by the Kentucky Department of Insurance will not be considered. This Court has already held that the section at issue is unambiguous. Thus, resorting to extrinsic evidence would be improper. *See, e.g.*, *Cent. Bank & Trust Co. v. Kincaid*, 617 S.W.2d 32, 33 (Ky. 1981) ("First . . . we need to determine whether the terms . . . are ambiguous. If they are, then extrinsic evidence may be resorted to . . . if not, then extrinsic evidence may not be resorted to.").

### III. CONCLUSION

For the reasons discussed herein, Plaintiff has failed to meet its burden under Federal Rule of Civil Procedure 59(e). Preferred's arguments neither reveal a clear error of law, nor show that denying its motion would result in manifest injustice. Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's motion to Alter or Amend this Court's Judgment (DE 31) is **DENIED**.

Dated September 25, 2015.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY